### GEORGE DAVIDSON v. THE STATE.

#### No. 5117. Decided January 22, 1919.

**1.—Burglary—Insufficiency of the Evidence—Presumption.**

Where, upon trial of burglary, the conviction depended upon one presumption based upon another presumption, etc., and the evidence failed to show a breaking and was otherwise insufficient, and the accomplice's testimony was not corroborated, the conviction could not be sustained.

**2.—Same—Accomplice—Charge of Court—Requested Charge.**

Where, upon trial of burglary, the evidence showed that certain witnesses were accomplices by their own testimony and others the court should have so charged the jury, and should not have left it as a matter of fact for them to determine.

Appeal from the District Court of Travis. Tried below before the Hon. James R. Hamilton.

Appeal from a conviction of burglary; penalty, six years imprisonment in the penitentiary.

The opinion states the case.

*Warren W. Moore,* for appellant.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of charge on accomplice testimony: Zollicoffer v. State, 16 Texas Crim. App., 312; Pace v. State, 58 Texas Crim. Rep., 90; Savage v. State, 75 Texas Crim. Rep., 213, 170 S. W. Rep., 730.

DAVIDSON, PRESIDING JUDGE.—Appellants were convicted of burglary, their punishment being assessed at six years confinement in the penitentiary each.

The owner of the alleged burglarized house testified, substantially, that he did not know whether his house had been broken and entered or not; that there was no evidence of a breaking. If there was a breaking the circumstances will be stated hereafter in this opinion with reference to a piece of iron found in the pocket of a coat belonging to defendant Davidson. The State relied on inferences from other facts to show the

house had been broken and entered. Some goods were found at the residence of Shipman, where the defendants were staying or boarding. These goods were in possession of Shipman and his wife, and not in possession of the defendants. Shipman was indicted for the same alleged burglary as charged in the indictment; was placed in jail, and turned State's evidence, under contract of immunity from punishment, and testified for the State. His evidence was, substantially, that the defendants brought the goods to him at night and delivered them to him. Among other things was some bed ticking and another piece of cloth found in Shipman's house. He says: "While at my house they brought some things there. I saw that bed ticking at my house. . . . One time they brought a ham and two pieces of bacon, I think it was, and then the bed ticking and a piece of red cloth. . . . They did not tell me where they got it. They said it was all bought and paid for, and I did not ask them where they got it." Further testifying, he says: "On the morning just before the arrest I heard Davidson talking to the other two men. He was talking to John and Frank in this west room, and I was in the middle room and my wife was in the kitchen, but was at the machine making a skirt, and I heard him say: 'Hell, he will go in the hands of a receiver and never know how he got there.' I didn't know what he was talking about. I never had any conversation with either of them or all of them with reference to going in a store on the Avenue; they never talked to me about going into any store on the Avenue. I asked them about closing a door to the store,—I said: 'What do you do, go in and leave the door open?' 'No,' he said, 'We come out and leave it just like we find it.' They didn't tell me what store it was, I don't know whether they knew the name of the store or not. They told me where the store was, said across the Avenue. I live on the east side of the Avenue, and Caldwell & Miller's store is on the west side."

Mrs. Shipman's testimony is very brief. She testified, substantially, to defendants bringing them goods and their receiving them, and some other things that were brought there by defendant Davidson, which were sent her from a distance. She made those up into clothing of different sorts and sold them.

Mr. Caldwell, one of the alleged owners of the house burglarized, says: "I do not know anything about my store having been burglarized about December 5, 1917, as charged in the indictment in this case, and the first suggestion that such was the case came when I was called upon by officers to examine certain articles of merchandise to see whether or not they belonged to the firm of Caldwell & Miller. I had no idea up to that time that my store had been broken into or that anything had been taken out of it, but I went with the officers, who exhibited several yards of bed ticking, that was marked or flawed in making it, and some red cloth that I could identify as belonging to Caldwell & Miller. I also recognized a small remnant of red cloth as being a piece of goods of the same kind we had in stock, which has been missed between De-

cember 5th .and several days thereafter, and was a remnant that was gone from our store that we had been unable to account for. None of these articles had any particular mark by which I could identify them except the bed ticking, which had flaws in it as I have testified, and I will not swear more positively to them than I have sworn. In my best judgment they are our property; my judgment is based upon the facts I have testified to. . . . An examination of the building showed that the building, windows and doors had not been broken, bruised or tampered with in any manner, and if the goods exhibited to me were taken from the store it must have been by someone who was able to enter the house by opening the doors without breaking same or in any way interfering with them otherwise than being able to unlock them in some manner, and so far as I am concerned if my store was burglarized, as charged, I would have been perfectly unaware of any forced or unlawful entry into the store." He further states: "I would not have known that anyone had entered my store or had any idea of it if the officers had not called upon me to examine certain merchandise of the character carried in a store such as is operated by me and Mr. Miller. I do not know that the store was entered and if entered I do not know when it was entered, nor by what manner unless by someone able to manipulate the lock on the double doors without breaking them and closing them without leaving any traces of the entry that were discoverable by me or any traces except the scratches and marks on the tongue of the lock made by the parties who entered the store." He further testified that the goods showed to him were part of a large lot of goods and merchandise that firm carried, and that other merchants in the city of Austin carried the same character of goods. In that connection he says: "It is true that many other general merchants in Austin and Travis County buy bed ticking and red cloth of the kind presented to me for examination from the same houses or people that I bought that."

Deputy Sheriff McCoy testified that he went to the residence of Shipman in South Austin, where he resides with his wife. He said he met Shipman and asked him if any men were staying there, and he said they stayed all night, but that he, Shipman, went to Mr. Brown's market to work. "I went in the little shed and there was no one there, and then into the back room, and I heard voices. I pulled the door and opened it, and these three men were in the little room. I spoke to and arrested all three." He found some of the goods already mentioned while he was at the house. He says: "In a trunk I found some handkerchiefs and a piece of silk, and in this room I got a blue serge suit of clothes belonging to George Davidson, and in one of its pockets I found the iron piece about an inch wide and a sixteenth of an inch thick with which Mr. Barbisch and myself afterwards manipulated the lock on the double doors of Caldwell & Miller's store, opening said doors with said instrument." He seized and took to the sheriff's office all these goods that have been mentioned. Appellants claimed none of the goods except the blue serge suit, which was claimed by the defend-

ant Davidson, and in the coat of this suit the officer found the piece of iron above mentioned, and with which they manipulated the door.

The appellants took the witness stand and denied all connection with the burglary; said they had nothing to do with bringing the goods to Shipman's house; had entered nobody's store, and went into an elaborate history under rigid cross-examination as to where they had been spending practically all their lives. One of the defendants, it seems, was not at Shipman's house part of the time, but left Austin and was to meet a friend at Pflugerville in the northern part of Travis County. While waiting at Pflugerville for the party who failed to appear, he was found near the depot by an officer who gave him money to return to Austin. This is in substance the case.

We are of opinion this evidence is not sufficient to authorize the conviction. The whole case seems to have been made up from the statement of Shipman, and inferences and presumptions, many of which were based upon each other. It is a rule well recognized that one presumption is not basis for another presumption, or that one inference can not be drawn from another inference in order to form the basis of conviction. These matters are too remote and too indefinite. The identification of the property is far from being definite. There is no evidence in the case that this house was ever broken into, unless it be by testimony to the effect that the piece of iron found in Davidson's pocket could be used to open the Yale lock. The officers testified they took the piece of iron and did open the Yale lock, and found some scratches on the lock. The mere fact that Davidson had a piece of iron in his pocket that would open a lock is not evidence of the fact that he did open the lock, and the inference to be drawn from it by the State was to affect the minds of the jury with the fact that because he had the iron in his pocket, and the officers opened the lock with it, therefore Davidson opened it, or if he did not he could have done so. Nobody saw the defendants in possession of this property except Shipman and his wife. That Shipman was an accomplice in this case if a burglary was committed there can be no question. He had the goods in his possession, was indicted, and turned State's evidence in order to escape punishment. If he did not enter the house himself, he received stolen goods, for his testimony shows that he believed the goods were stolen as evidenced by the conversation he had with one or more of the defendants with reference to entering the store and bringing the goods away. If he was the thief and did the stealing, of course these defendants are not guilty. If he was an accomplice, the testimony does not corroborate him as we understand this record. He was testifying under immunity; found in possession of goods that Caldwell seems to think were taken from his store. His excuse for possession was that he got them from these defendants. Their account to Shipman of purchase was not overcome by the facts if they delivered the goods to him. This account was put in by the State. We do not think the evidence sufficient from another standpoint. If a house is shown to have been broken in a burglarious

manner, and the party is found in possession of property recently thereafter, and the property is identified as coming out of the house, it is a circumstance to be considered as to the guilt of the party in whose possession the goods are found. It is not necessarily conclusive, but a fact or circumstance to be considered. But before a conviction can be predicated upon this theory, it must be first shown that a burglary was committed, that is, the breaking of the house in such manner as to show it was done for the purpose of committing a felony or the crime of theft, and, second, that recently thereafter the party was found in possession of property that came out of the house. As before stated, appellants were not found in possession of these goods, but Shipman was, and from any viewpoint he was testifying under such circumstances, as above stated, that he would have to be corroborated as to the facts about which he did testify, seeking to connect the defendants with any burglarious entry or the taking of the property.

Other questions are raised in the case. One or more bills of exception show that exceptions were taken to the manner of cross-examining the defendants with reference to other matters that were not shown to have been secured or obtained by a burglarious entry, or in any way criminal in their tendency. They were shipped direct to Shipman, so Shipman says, from other points; some of them perhaps not in Texas. We believe the charge on accomplice testimony asked by defendants should be given upon another trial, if one is had, to the effect that Shipman is an accomplice. Such we understand to be the rule where the facts are such as depicted in this case, and especially where the party turns State's evidence after indictment is found in order to avoid punishment. The court charged the jury with reference to accomplice testimony, but left it as a matter of fact for the jury to determine whether or not the Shipmans were accomplices. Upon another trial we are of opinion the court should charge that they are accomplices as shown by their own testimony and that of the officers.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*